## WASKIN DEVELOPMENT COMPANY *v.* WEYN.

1. APPEAL AND ERROR—NONJURY CASES—FINDING OF FACT—EVIDENCE.

    A finding of fact by a trial judge in a nonjury case is not disturbed by the Supreme Court on appeal, where there is sufficient evidence to support the finding.

2. CORPORATIONS—CONVEYANCE OF REALTY BY SECRETARY—AUTHORITY—EVIDENCE.

    Evidence presented in corporation's nonjury action against its secretary and wife for wrongfully conveying corporate property *held,* ample to support finding of trial court that no authority existed in defendants to make the conveyance.

3. APPEAL AND ERROR — CORPORATIONS — CONVEYANCE OF REALTY — FRAUD — GIFTS — ADMISSION OF EVIDENCE.

    Claim of error in admission, of evidence tending to show fraud, wrongdoing, or conspiracy in action by corporation substantially at variance with the pleadings in action against the corporation's secretary and his wife for wrongfully conveying corporate realty *held,* not supported, where evidence supports plaintiff's theory that defendants had made a gift of the corporate property without consideration and without authority.

4. CORPORATIONS—RATIFICATION—UNAUTHORIZED ACTS.

    Receipt of $7,400 benefit by plaintiff corporation by way of credit applied to land contract by vendors who had sold the

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 839.
[2] 13 Am Jur, Corporations §§ 938, 939, 1018.
[3] 13 Am Jur, Corporations §§ 938, 939, 1017, 1018.
   5 Am Jur 2d, Appeal and Error §§ 876, 880.
[4] 13 Am Jur, Corporations § 984.
   Ratification by corporation of unauthorized contract entered into by officer by acceptance and retention of benefits.   7 ALR 1446.
[5] 13 Am Jur, Corporations §§ 938, 939, 1014.
[6] 13 Am Jur, Corporations §§ 938, 939, 1014, 1018.

real estate to plaintiff *held*, not to have constituted ratification of unauthorized conveyance of corporate realty, by secretary, as a gift thereof, where immediately steps were taken to obtain a reconveyance upon learning of the action of defendant secretary.

5. Same—Unauthorized Transfer of Corporate Realty—Damages.
Damages need not be calculated with absolute exactness in an action against corporation's secretary for unauthorized conveyance of its realty, it being sufficient if a reasonable basis for computation be employed even though the results be only approximate.

6. Same — Conveyance of Realty — Consideration — Authority — Damages — Evidence.
Evidence *held*, to have justified judgment for $8,700 damages in action by corporation against its secretary and his wife for conveyance of corporate realty without consideration and without authority.

Appeal from Lenawee; Martin (Rex B.), J. Submitted June 5, 1962. (Calendar No. 3, Docket No. 49, 223.) Decided February 6, 1963.

Case by Waskin Development Company, a Michigan corporation, against Joseph J. Weyn and his wife Elizabeth Ann Weyn, for damages resulting from unauthorized execution of corporate deed. Judgment for plaintiff. Defendants appeal. Affirmed.

*Bromberg & Robinson,* for plaintiff.

*William Henry O. Dance (J. David Owens,* of counsel), for defendants.

Otis M. Smith, J. This is an action at law in which plaintiff seeks damages from defendants for wrongfully conveying corporate realty. The trial judge states the case somewhat picturesquely, but apparently with a high degree of accuracy:

"This matter was ably tried on December 13 and 14, 1960, and taken under advisement. The testimony was conflicting and carried the court through a maze of intricate business transactions. Truly this was a part of a saga of 3 'promoters' out to make their fortunes with land development in Lenawee county. The story is fascinating with suspense, intrigue, high hopes, high finances and a grievous dashing of dreams.

"Doctor Waskin, a Detroit osteopathic physician, had used the services of defendant Joseph Weyn, a proficient accountant, in adjusting a matter with the internal revenue service. Later Doctor Waskin was persuaded to enter a land development project in our fair county. He had the plaintiff corporation formed and was, with his wife, owner of about 90% of its capital stock.

"Joseph Weyn, hereinafter referred to as the defendant, became secretary. The minutes he kept were not only unsigned but incomplete. For some meetings there were no minutes at all. The minutes themselves are therefore a very unreliable guide [in] searching for the truth.

"In early 1957 Doctor Waskin met with Theodore Templeton, a third 'promoter' in our story. These 3 men, Doctor Waskin, Mr. Templeton and the defendant were far from being 3 musketeers. Their motto seems to have been 'All for each and each for himself.' With Templeton constructing houses on plaintiff's lots, the corporation began actual business. In September, 1957, Templeton left the corporation and as an independent contractor signed an agreement, exhibit number 4, with the plaintiff. There is a dispute as to what the parties' rights were under this contract.

"From the face of all of the terms of the contract and from the testimony, the court is convinced the parts of the contract material to this litigation gave Templeton the exclusive right to buy lots in plaintiff's subdivision. The purchases were to be made in chronological order—or at least, no lots were to

be jumped and left vacant in the course of the development. Plaintiff would give Templeton a warranty deed to each lot as Templeton requested it. Templeton would then give plaintiff a quitclaim deed back for plaintiff's security until the full purchase price was paid. Templeton could then get a construction loan, build the house, sell it to an ultimate purchaser and pay off the plaintiff. When the ultimate purchaser financed the purchase, plaintiff would be paid by Templeton for the lot and the quitclaim deed would be destroyed."

The agreement referred to in the trial judge's opinion was executed in September, 1957, between the corporation as seller, and the copromoter, Theodore Templeton, as purchaser. Pertinent parts of this agreement are printed in the margin.* The

---

* "Whereas, it is the purpose of this agreement to establish a working arrangement whereby the seller will convey, as hereinafter set forth, by warranty deed to the purchaser the title to the above described lots so that the purchaser may build houses thereon, financing the erection thereof by construction mortgages and final mortgage in the negotiation of a resale of said property to individual purchasers and also provide adequate security to the seller for the payment of the purchase price of each lot conveyed to the purchaser as hereinafter set forth;

"Now, therefore, it is hereby agreed by and between the said parties as follows:

"1. The seller shall convey to the purchaser by warranty deed title to any of the above mentioned lots, the sales price for which shall be the sum of $1,100 each, excepting that the sales price for Lots 18, 112, 113 and 114 shall be the sum of $1,850 each.

"2. The purchaser agrees to pay the seller said prices for each of said lots and he further agrees to execute and deliver to the seller for the purpose of securing the payment of said purchase price of each lot a quitclaim deed contemporaneously with the execution and delivery of the warranty deeds by the seller as aforestated.

"3. The purchaser agrees to pay the seller said stipulated price for each of said lots at the time of the erection of the house on each lot and the execution of the final mortgage to finance and negotiate a sale thereof to the individual purchasers of said properties, it being clearly understood that upon the sale of said lots with houses thereon to individual purchasers, the seller shall be paid the purchase price of said lot owing to the seller from the proceeds of the sale thereof and upon payment thereof the seller shall return the quitclaim deed pertaining to the lot paid for.

"4. It is clearly and expressly understood and agreed that the purchaser is not an employee, agent or representative of the seller in any manner whatsoever, in the consummation of this agreement;

agreement was signed by Edmund W. Waskin as president of the corporation; Joseph J. Weyn as secretary, and Jeanie E. Waskin as treasurer. The other party to the contract was Theodore M. Templeton. On May 7, 1959, the defendants, purportedly acting for plaintiff-corporation, executed a warranty deed to the Practical Investment Corporation for 37 lots. Practical Investment was owned by Templeton. Defendant, Elizabeth Ann Weyn, signed as "Assistant Treasurer" of plaintiff corporation, although apparently she had no authority to sign deeds. The deed was given without consideration and without security. It also was apparently known by defendants that Templeton was in financial difficulty and needed the lots in order to be able to mortgage same and raise money for personal purposes. Shortly afterwards, Practical Investment became bankrupt.

Plaintiff claims that defendants had no authority to execute the deed and by so doing wrongfully conveyed corporate property to its injury. Defendants claim they had authority, either expressed or implied, but that, in any event, the corporation had ratified the conveyance. Defendant Weyn claims that he had authority from the time the project was begun or that he obtained the authority by virtue of a series of transactions which now can be shown indisputably to prove that he had requisite

that the seller is not bound by any representation, statement or commitment of the purchaser and that the purchaser shall have no authority or power to subject or bind the seller to any expense, charges or liability of any kind or nature in the construction of the houses on said lots, it being understood that the relationship between said parties is strictly that of a seller and purchaser.

"5. It is further understood that the seller may record with the register of deeds any and all quitclaim deeds given by the purchaser to the seller as hereinbefore provided at any time the seller deems it necessary to further protect its interest in said lots. * * *

"16. The purchaser shall have the exclusive right to purchase the above described lots in accordance with the provisions herein contained and the seller shall not sell said lots to anyone while this agreement is in force and effect."

authority to make the conveyance. Defendants contend further that in executing the deed to Practical Investment they were carrying out obligations of plaintiff corporation as set forth in the agreement with Templeton; that refusal would have been contrary to the best interests of plaintiff. Two witnesses for plaintiff corporation testified that in a directors' meeting approximately 1 year prior to the conveyance by defendants, the Waskin Company directors adopted a resolution requiring the signature of Dr. Waskin, as president, on all deeds. The corporate records do not reveal any minutes of this meeting and the testimony seems to show that a number of meetings were held in which defendant, Joseph Weyn, who was secretary, "didn't get around to" recording. Defendants deny any such meetings ever took place or that any such resolution was adopted. The trial judge examined in great detail a number of transactions between the various parties hereto. He found that the conveyance in question was "completely foreign to the pattern of all other deeds", that defendants knew that the Templeton mortgage was not to be used for construction purposes as the agreement provided, but was to be used by Practical Investment and/or Templeton to pay off accumulated debts. The trial judge found that defendants had no authority to make the conveyance of the 37 lots. He expressed it this way: "The defendants had no authority to sign exhibit 17 (the disputed deed) and convey 37 lots to P. I. C. As Mr. Dixon testified, all deeds after 1958, 'should and must be signed by Doctor Waskin.' Defendants in effect gave away plaintiff's property contrary to any right or authority they had and against specific instructions."

It should be noted that the agreement provided for a quitclaim deed to be delivered to plaintiff corporation contemporaneously with the execution and delivery of any deed to the purchaser, Temple-

ton.  Testimony was in conflict as to whether a quit-claim deed was given to plaintiff.  The trial judge sitting without a jury heard the testimony and observed the witnesses.  It is apparent that he believed the witnesses for plaintiff.  We will not substitute our judgment for his where there is sufficient evidence in the record to support his finding.  The evidence is ample and we therefore do not disturb his finding that no such authority existed in defendants to make the conveyance.

Appellants claim error in that the trial judge admitted evidence tending to show fraud, wrongdoing, or conspiracy which, it was claimed, was substantially at variance with the pleadings.  Plaintiff's counsel expressly stated when asked by the court if he wished to amend his declaration, after objection by defendant, "We are not charging the defendants with fraud."  Plaintiff's theory is that defendants made a gift of corporate property, that is, without consideration and without authority.  The evidence supports this position.

The other questions which remain have to do with whether or not plaintiff ratified the transaction and also whether damages claimed and assessed were too speculative.  The testimony tends to show that in order to obtain clear title to the 37 lots, the grantee, Templeton, had to pay to a certain bank the sum of $200 per lot or $7,400.  Apparently this sum was transmitted to certain land contract vendors of plaintiff in satisfaction of their remaining interest.  The testimony is undisputed that plaintiff was first put on notice of the conveyance in July, 1959, and that immediately steps were taken by Dr. Waskin to obtain a reconveyance.  We cannot say that, under conditions hereinafter described, receipt of the $7,400 benefit constituted ratification of the transaction.  Appellants cite no such authority, nor do we find any.

Relative to the claim that damages were too speculative, we refer again to the trial court's opinion which contains this finding:

"In determining the amount of damages, we again have inadequate testimony and an absence of the best evidence of the loss. Apparently Doctor Waskin loaned the corporation $16,100 which the corporation used to pay off the mortgage. The mortgagee had paid $7,400 to secure title in plaintiff, so plaintiff lost $8,700 because of the defendants' illegal action.

"Now, Doctor Waskin claimed the total was over $9,100, but he didn't account for the difference between $8,700 and $9,100 adequately. He had no checks, receipts or written evidence to substantiate the difference, so the court will allow judgment against the defendants, jointly and severally, in the amount of $8,700."

Damages need not be calculated with absolute exactness. It is sufficient if a reasonable basis of computation be employed although the results be only approximate. *McCullagh* v. *Goodyear Tire & Rubber Co.*, 342 Mich 244 at 254.

Appellants freely concede that their case depends upon the facts unembellished by authority. The rule does not need citation that in our review of nonjury cases we will not reverse the trial court unless the evidence preponderates against the finding. Herein, the evidence was more than sufficient to justify the judgment.

Affirmed. Costs to appellee.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, and SOURIS, JJ., concurred.

O'HARA, J., took no part in the decision of this case.