■ ANTHONY C. CURRY, an Infant, by His Father, CHARLES CURRY, et al., Respondents, v NEW YORK CITY HOUSING AUTHORITY, Appellant.—Order, Supreme Court, New York County, entered October 30, 1979, granting plaintiff's motion to dismiss the first, second, third and fifth affirmative defenses, and denying the defendant's cross motion to dismiss the complaint for failure to serve a timely notice of claim, to dismiss the second and third causes of action as not embraced in the notice of claim, and to dismiss the second and third causes of action for failure to state a cause of action, modified, on the law, without costs, to grant defendant's motion to dismiss the second and third causes of action, and otherwise affirmed. This is an action for damages allegedly sustained when a two-year-old child fell out of the window of an apartment owned and managed by the defendant. Three causes of action are set forth, all based upon alleged defects in the window from which the child fell. The first cause of action alleges negligence of the defendant in allowing the window to become and remain in a defective condition, without a window guard, in an apartment in which small children were known to live. The second cause of action alleges that the defective condition of the window constituted a violation of implied warranty of habitability embodied in section 235-b of the Real Property Law. The third cause of action alleges violation of section 131.15 of the Health Code of the City of New York regulating the circumstances under which window guards are to be placed on the windows of apartments in which children under 10 years of age are known to reside. In the order appealed from, Special Term granted plaintiff's motion to dismiss the first affirmative defense alleging comparative negligence, the second affirmative defense alleging that the notice of claim was not timely served, and the third and fifth affirmative defenses alleging varying failures to comply with section 50-

e of the General Municipal Law. In addition, Special Term denied defendant's cross motion to dismiss the complaint for failure to serve a timely notice of claim, to dismiss the second and third causes of action as not having been properly embraced in the notice of claim, and finally to dismiss the second and third causes of action for failure to state a cause of action. We agree with Special Term's order for the reasons set forth in its opinion except with regard to the denial of defendant's motion to dismiss the second and third causes of action for failure to state a cause of action, and modify the order appealed from accordingly to dismiss those causes of action. The third cause of action is based on a supposed violation of section 131.15 of the Health Code of the City of New York, regulating the circumstances under which one who owns or manages a multiple dwelling is required to install a window guard in apartments where children are known to reside. However, the section did not become legally effective as to the defendant until a date following the accident at issue here. To the extent to which plaintiff seeks to state a claim for strict products liability based upon the failure to install such a guard, we are aware of no authority that supports the application of that principle to these facts. To the extent to which the third cause of action alleges negligence, it is clearly duplicative of the first cause of action. The most important of the issues on this appeal is presented by the second cause of action alleging that the defective condition of the window constitutes a violation of the implied warranty of habitability set forth in section 235-b of the Real Property Law. That section adopted in 1975, provides in pertinent part as follows: "1. In every written or oral lease or rental agreement for residential premises the landlord or lessor shall be deemed to covenant and warrant that the premises so leased or rented and all areas used in connection therewith in common with other tenants or residents are fit for human habitation and for the uses reasonably intended by the parties and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety." In substance the thesis advanced by plaintiff is that this section imposes upon landlords strict liability for injuries or damages sustained as a result of the violation of the warranty of habitability. The issue presented is clearly one of large importance and has been the subject of contradictory decisions that have presented thoughtful and illuminating discussions of the underlying policy considerations. In *Kaplan v Coulston* (85 Misc 2d 745), the Civil Court accepted the thesis here urged by plaintiff and this view was thereafter adopted by the Appellate Term in *McBride v 218 E. 70th St. Assoc.* (102 Misc 2d 279). (See, also, *Goodman v Ramirez,* 100 Misc 2d 881.) A contrary view was taken in New Jersey in *Dwyer v Skyline Apts.* (123 NJ Super 48, affd 63 NJ 577). We agree that the language of warranty in section 235-b was adapted from the law of sales, with its implied warranty of fitness (Uniform Commercial Code, § 2-314), where it was the subject of a well-known legal development in which strict liability was imposed on those who manufacture or sell defective goods and products to the public. However, a study of the section's legislative history makes it quite improbable that the authors contemplated extension of the principle of strict liability to landlords for injuries and damages traditionally the subject of tort liability. As the legislative history strongly indicates, the section was intended to codify principles that had been first developed in appellate decisions of other jurisdictions and had then come to receive increasing acceptance in the courts of this State. (See, e.g., *Javins v First Nat. Realty Corp.,* 428 F2d 1071; *Lemle v Breeden,* 462 P2d 470 [Hawaii]; *Marini v Ireland,* 56 NJ 130; *Amanuensis, Ltd. v Brown,* 65 Misc 2d 15; *Morbeth Realty Corp. v Velez,* 73

Misc 2d 996; *Steinberg v Carreras,* 74 Misc 2d 32; *Tonetti v Penati,* 48 AD2d 25.) This developing body of law reflected judicial distress at the palpable unfairness, as applied to contemporary conditions, of older principles of landlord and tenant law that effectively separated the right of the landlord to receive rent from his obligation to maintain apartments decently in accordance with the requirements of law. As observed by Chief Judge Cooke in *Park West Mgt. Corp. v Mitchell* (47 NY2d 316, 325), the result of this traditional approach was that "the contemporary tenant possessed few private remedies and little real power, under either the common law or modern housing codes, to compel his landlord to make necessary repairs or provide essential services." The decisions increasingly reflected a judicial judgment that landlord and tenant principles having their origin in medieval conditions were not suitable to the realities of contemporary living in which tenants are seeking not the possession of real estate but decent, habitable living conditions. In the effort to adapt the older rules to contemporary conditions, the courts saw a ready analogy in commercial law principles based on the interdependence of rights and responsibilities. As was pointed out in the most significant of these decisions, *Javin v First Nat. Realty Corp. (supra,* p 1082): "Under contract principles, however, the tenant's obligation to pay rent is dependent upon the landlord's performance of his obligations, including his warranty to maintain the premises in habitable condition." There is no hint, either in the decisions that section 235-b was designed to codify, or the legislative history of that section, of any purpose to extend the doctrine of strict liability to landlords with regard to wrongs that had traditionally been an area of tort liability. Following the adoption of the Tenement Housing Law at the beginning of the century (L 1909, ch 99) which imposed on landlords the obligation to keep leased premises in good repair for the first time, the Court of Appeals (per Cardozo, J.) held that violation of this obligation by landlords resulting in injuries or damages gave rise to an action for damages in negligence. *(Altz v Leiberson,* 233 NY 16.) The rules governing the responsibility of landlords for injuries or damages sustained as a result of negligence have, of course, undergone a rich, diversified development. The fundamental principle now firmly established is that landlords owe a duty of "reasonable care" under the circumstances. (See *Basso v Miller,* 40 NY2d 233.) Although varying aspects of the application of this principle are the subject of legitimate disagreement, and further changes are surely foreseeable, we are aware of no dissatisfaction with the evolving body of tort law in this area that could be said to have contributed to the adoption of section 235-b. Certainly the legislative history of that section contains no such intimation. This is not to say that the statutory language may not be found to have some impact in the area of tort liability. It is not unprecedented in our jurisprudence for language shaped by a particular purpose to be found useful in responding to other problems. We think it reasonably clear, however, that this section was not intended at one stroke to bring about the significant change contended for on this appeal. We need not however reach that broad question on this appeal. Although surrounded by other vague imprecise phrases, this action is obviously based on the failure of the housing authority to have installed a window guard at a time when such installation was not mandated by any legislative enactment. We doubt that this claim would constitute a violation of the warranty of habitability even if the statute were given the construction urged by plaintiff. Accordingly, we think the case inappropriate for setting forth any broad, pre-emptive statement on the ultimate question raised other than to indicate the import of the legislative history. The

importance of the issue dictates that any definitive statement await cases that more clearly involve a claimed violation of the statute, and are more typical of the range of problems that may develop. Concur—Birns, J. P., Sandler, Sullivan, Ross and Silverman, JJ.