EVANS v VAN KLEEK

Docket No. 49947. Submitted June 3, 1981, at Grand Rapids.—Decided November 2, 1981.

Fred Van Kleek purchased a surplus school building for the purpose of converting it to a residence and, in 1971, he and two other persons rewired the building. Some time later he rented the premises to Martha and Alfred Evans. In 1978 the building caught fire and the Evanses' personal property was destroyed. The Evanses brought an action for damages against Van Kleek in Ogemaw Circuit Court. At trial, the fire chief testified that the cause of the fire was a cable staple which had been driven through an electrical wire when the building was wired. The court, Carl L. Horn, J., found that the defendant was liable to the plaintiffs because of the hidden defect in the premises and entered a judgment in favor of the plaintiffs. Defendant appeals, alleging several errors, and plaintiffs cross-appeal as to the amount of damages. *Held:*

1. The trial court properly denied defendant's motion for summary judgment based upon failure to state a claim upon which relief could be granted. The plaintiffs' complaint raised substantial questions of fact which could not be disposed of by summary judgment.

2. Although Michigan has not adopted the doctrine of *res ipsa loquitur,* negligence may be inferred from circumstantial evidence where the event causing the loss is of the kind which

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Summary Judgment § 26.

[2] 49 Am Jur 2d, Landlord and Tenant §§ 788-790.

[3] 49 Am Jur 2d, Landlord and Tenant § 788.
Modern status of rule requiring actual knowledge of latent defect in leased premises as prerequisites to landlord's liability to tenant injured thereby. 88 ALR2d 586.

[4] 29 Am Jur 2d, Evidence § 265.
30 Am Jur 2d, Evidence § 1120.
57 Am Jur 2d, Negligence § 474 *et seq.*

[5] 31 Am Jur 2d, Expert and Opinion Evidence § 31.

[6] 31 Am Jur 2d, Expert and Opinion Evidence §§ 26, 27.

[7] 22 Am Jur 2d, Damages § 80.

ordinarily does not occur in the absence of someone's negligence, the event was caused by an agency or instrumentality within the exclusive control of the defendant, the event was not due to any voluntary action or contribution on the part of the plaintiff, and evidence of the explanation of the event is more readily available to the defendant than to the plaintiff. The plaintiffs herein met this test for the inference of negligence on the part of the defendant.

3. The trial court did not abuse its discretion in allowing the fire chief of the volunteer fire department to testify as an expert witness.

4. The cause of the fire was established with reasonable certainty by the testimony of the fire chief and another fireman.

5. The plaintiffs could not prove the amount of their loss with any certainty. However, mathematical precision is not necessary, and the method by which damages were assessed herein was proper.

Affirmed.

1. JUDGMENTS — SUMMARY JUDGMENT — COURT RULES.

A motion for summary judgment on the basis that the opposing party has failed to state a claim for which relief can be granted tests only the legal, not the factual, sufficiency of the pleadings alone and the motion should be denied unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover (GCR 1963, 117.2[1]).

2. LANDLORD AND TENANT — DEFECTS IN PREMISES — NEGLIGENCE.

A lessor is liable to a tenant for injuries resulting from defects existing at the time that premises are leased where: (1) the lessor knew or should have known of the defects; (2) the lessor realized or should have realized the risk of physical injury arising from the defects; (3) the lessor conceals or fails to disclose the existence of the condition to the lessee; and (4) the defects are not observable to the lessee.

3. NEGLIGENCE — EVIDENCE — KNOWLEDGE OF DEFECT.

Proof of factual or constructive knowledge of a defect is not required where a hazardous condition is created by a defendant; such knowledge may be inferred from the circumstances.

4. NEGLIGENCE — INFERENCE OF NEGLIGENCE — EVIDENCE — CIRCUMSTANTIAL EVIDENCE.

An inference of negligence arising from circumstantial evidence

can be made only when the following four factors are present: (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) the event must have been caused by an agency or instrumentality within the exclusive control of the defendant; (3) the event must not have been due to any voluntary action or contribution by plaintiff; and (4) evidence of the true explanation of the event must be more readily accessible to defendant than to plaintiff.

5. WITNESSES — EXPERT WITNESSES.
   A trial court's determination that a witness qualifies as an expert witness will not be reversed absent an abuse of discretion.

6. WITNESSES — EXPERT WITNESSES.
   A person need not have formal education to be an expert witness, but may have acquired special knowledge of a subject by reason of his employment.

7. DAMAGES — NEGLIGENCE.
   Damages need not be determined with mathematical precision, and where there is doubt as to the actual measure of damages the doubt should be resolved against the wrongdoer rather than the injured party.

*King & Root, P.C.,* for plaintiffs.

*Kole & Kole,* for defendant.

Before: R. B. BURNS, P.J., and ALLEN and T. GILLESPIE,* JJ.

T. GILLESPIE, J. During the year 1968 the defendant, Fred Van Kleek, purchased from the school district in West Branch a surplus school house for the purpose of conversion to a residence.

In June of 1971 a nephew of Mr. Van Kleek, who was a licensed electrician, with the assistance of Mr. Van Kleek and his brother, rewired the building.

Mr. Van Kleek lived in the residence until 1975 when he rented it to William Kreiger, who lived in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the building until January, 1977, when it was rented by the plaintiffs, Alfred and Martha Evans.

On March 29, 1978, the building caught fire. No one was injured in the blaze, but plaintiffs' personal property was destroyed. The Evanses were uninsured and sued Van Kleek for their loss. In a bench trial, Judge Carl L. Horn found defendant liable and assessed plaintiffs' damages at $15,000.

The chief of the volunteer fire department at West Branch was Mr. Stephen Norton. He was allowed by the court to testify as to his opinion regarding the cause of the fire, which he attributed to a cable staple being driven through an electrical wire at the time the building was wired.

From the decision the defendant appeals, complaining that the court erred in a number of respects which, summarized, are:

1. That summary judgment should have been granted to the defendant;

2. That the court erred in reliance on the rule of law set forth in *Wallington v Carry,* 80 Mich App 248; 263 NW2d 338 (1977), to find liability against the defendant;

3. That the court erred in finding Stephen Norton to be qualified as an expert and in allowing him to give his ultimate opinion as to the cause of the fire;

4. That the evidence was insufficient as to the cause of the fire;

5. That the fair market value of the property lost by the plaintiffs was not established.

At the beginning of the trial the defendant moved for summary judgment under GCR 117.2 on the basis that there was no cause of action against the landlord because he had no liability.

Properly stated the motion should have been that "the opposing party has failed to state a claim

upon which relief can be granted". GCR 1963, 117.2(1).

In reviewing a grant or denial of summary judgment under GCR 1963, 117.2(1), the motion is tested by the pleadings alone. The motion tests only the legal and not the factual sufficiency of the pleadings and the motion should be denied unless the claims are so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover. *Allinger v Kell,* 102 Mich App 798, 806-807; 302 NW2d 576 (1981).

The complaint in this case alleged in Count I that defendant's installation of wiring violated MCL 554.139; MSA 26.1109, which provides that in every lease of residential premises the landlord covenants that the premises are fit for the use intended, to keep the premises in reasonable repair and to comply with the health and safety laws of the state and local government. In Count II the plaintiffs claim that the defendant should have known the wiring was improper and that he failed to warn the plaintiffs. In Count III the plaintiffs claim that the improper installation of the wiring was an unreasonable use of the property.

The granting of judgment before proofs are offered in cases where *res ipsa loquitur* would apply in other jurisdictions was warned against by this Court in *Crawford v Palomar,* 7 Mich App 21; 151 NW2d 236 (1967).

Certainly these counts raised substantial fact questions which could not be disposed of by summary judgment and the court was correct in its denial of the motion.

The case of *Wallington v Carry, supra,* was relied upon by the trial judge in deciding for the plaintiffs. The rule in *Wallington* is:

"A lessor, therefore, is liable to a tenant for injuries resulting from defects existing at the time premises are leased where: (1) the lessor knew or should have known of the existence of the defects; (2) the lessor realized or should have realized the risk of physical injury arising from the defect; (3) the lessor conceals or fails to disclose the existence of the condition to the lessee; and (4) the defect is not observable to the lessee. See, Restatement Torts, 2d, § 358 (1965)." 80 Mich App 248, 251.

The circumstantial evidence indicated that the fire started from a cable staple being driven into a Romex wire. Chief Norton and John Swanek, another fireman, testified they followed the burn pattern of the fire down to the staple where it stopped and there was no burning below that point. The staple was fused to the electric wire. The wire was hidden under the paneling. Harder to explain is who drove the staple. When was it put in and if it was done by Mr. Van Kleek, his brother or his nephew, why was there no short circuit for eight years?

Negligence law in Michigan does not require the proof of actual or even constructive knowledge of a defect where a hazardous condition is created by a defendant, but it may be inferred. *Anderson v Merkel,* 393 Mich 603, 605; 227 NW2d 554 (1975).

The Supreme Court has on many occasions refused to place the stamp of imprimatur on the pure doctrine of *res ipsa loquitur,* but the Court has also recognized that a prima facie case of negligence can be made out by circumstantial evidence from which negligence may be inferred.

The law of Michigan in regard to *res ipsa loquitur* is well reviewed in *Gadde v Michigan Consolidated Gas Co,* 377 Mich 117; 139 NW2d 722 (1966). See, also, *Lipsitz v Schechter,* 377 Mich 685; 142 NW2d 1 (1966), *Holmes v Gargaro Co,* 368 Mich

589; 118 NW2d 697 (1962), and Comment Note, 141 ALR 1016, 1017, an annotation which distinguishes Michigan's position from states recognizing the pure doctrine of *res ipsa loquitur.*

In *Gadde, supra,* 124, the Court set forth four conditions which generally exist for *res ipsa loquitur* to apply, namely:

"1. The event must be of a kind which ordinarily does not occur in the absence of someone's negligence.

"2. The event must have been caused by an agency or instrumentality within the exclusive control of the defendant.

"3. The event must not have been due to any voluntary action or contribution on the part of the plaintiff.

"4. Evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff."

The Court of Appeals has applied these conditions as a basis for the doctrine of inferred negligence. *Stefan v White,* 76 Mich App 654; 257 NW2d 206 (1977), *Rose v McMahon,* 10 Mich App 104; 158 NW2d 791 (1968).

In this case the cause of the fire was traced to a staple driven through a Romex wire. This ordinarily does not occur in the absence of someone's negligence. The wiring was done by the defendant, his brother and nephew and then panelled in. The evidence indicated no participation or contribution on the part of the plaintiffs. The knowledge of the defect was more accessible to the defendant than to the plaintiffs. The plaintiffs, therefore, met the test for inference of negligence and the trial court did not err in finding for the plaintiffs as to the liability of the defendant.

As to defendant's complaint that Chief Stephen

Norton was qualified by the trial court as an expert witness, this is a matter of discretion. Determination of the qualification of an expert by the trial court will not be reversed absent an abuse of discretion. One need not have a formal education to be an expert, but may have acquired special knowledge of a subject by reason of his employment. *S C Gray, Inc v Ford Motor Co,* 92 Mich App 789, 805; 286 NW2d 34 (1979), *lv den* 408 Mich 869 (1980).

Chief Norton explained the evidence upon which he based his opinion that the fire started as a result of a misplaced cable staple and, whether he was qualified as an expert or not, the jury had the evidence to arrive at the ultimate decision. His testimony and the testimony of John Swanek established the cause of the fire with reasonable certainty.

More difficult is the question of damages. All that plaintiffs could provide to prove their losses was an exhibit in which they listed, as best they could, their memory of items lost, some purchase dates and purchase prices. The court found the loss to be roughly $20,000 and applied a 25% depreciation factor.

The rule in such cases is set forth in *Godwin v Ace Iron & Metal Co,* 376 Mich 360, 368-369; 137 NW2d 151 (1965), wherein the Court said:

" 'But where injury to some degree is found, we do not preclude recovery for lack of precise proof. We do the best we can with what we have. We do not, "in the assessment of damages, require a mathematical precision in situations of injury where, from the very nature of the circumstances, precision is unattainable." Particularly is this true where it is defendant's own act or neglect that has caused the imprecision.' *Purcell v Keegan,* 359 Mich 571, 576 [103 NW2d 494 (1960)].

"The policy for this rule of damages was stated by Justice CHRISTIANCY:

" 'Since, from the nature of the case, the damages cannot be estimated with certainty, and there is a risk of giving by one course of trial less, and by the other more than a fair compensation—to say nothing of justice—does not sound policy require that the risk should be thrown upon the wrongdoer instead of the injured party? However this question may be answered, we cannot resist the conclusion that it is better to run a slight risk of giving somewhat more than actual compensation, than to adopt a rule which, under the circumstances of the case, will, in all reasonable probability, preclude the injured party from the recovery of a large proportion of the damages he has actually sustained from the injury, though the amount thus excluded cannot be estimated with accuracy by a fixed and certain rule.' *Allison v Chandler,* 11 Mich 542, 554 [1863]."

See, also, *Gilbert v Kennedy,* 22 Mich 117, 130-131 (1871), *Kalamazoo v Standard Paper Co,* 182 Mich 476, 489; 148 NW 743 (1914), *Routsaw v McClain,* 365 Mich 167; 112 NW2d 123 (1961), *Waskin Development Co v Weyn,* 369 Mich 121, 128; 119 NW2d 662 (1963). See, also, *Lorenz Supply Co v American Standard, Inc,* 100 Mich App 600, 611-612; 300 NW2d 335 (1980).

The judgment of the trial court is affirmed with costs to the appellee.