Robert Dean MEYER, et al., etc., Appellants,

v.

David PARKIN, Respondent.

No. C9–83–1128.

Court of Appeals of Minnesota.

June 19, 1984.

Review Denied Sept. 12, 1984.

Charles A. Bird, Steward, Perry, Mahler & Bird, P.A., Rochester, for appellants.

Peter C. Sandberg, Dunlap, Keith, Finseth, Berndt & Sandberg, P.A., Rochester, for respondent.

Heard, considered and decided by WOZNIAK, P.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from an order of the trial court granting respondent Parkin's motion for dismissal and entry of judgment thereon. Appellants Meyer contend the court erred in holding that Minn.Stat. § 504.18 (1982) did not remove the element of scienter from the rule that a lessor has a duty to warn a lessee of any concealed defects the lessor knew or should have known existed. We affirm.

## FACTS

From December 1, 1978 to late December 1979, appellants Meyer lived in an apartment owned and rented to them by respondent Parkin. During the Meyer tenancy, one of their three children, Jennifer Dawn, developed myoclonusopsoclonus encephalopathy, involving permanent physical and mental neurologic damage. There was medical evidence the condition was caused by toxic poisoning from formaldehyde exposure. The apartment was found to contain formaldehyde.

The Meyers brought this action against Parkin for damages sustained by Jennifer, alleging Parkin violated the statutory requirement "That the premises and all common areas are fit for the use intended by the parties." Minn.Stat. § 504.18, subd. 1(a) (1982). Parkin moved for summary judgment, contending section 504.18 does not afford tenants a personal injury action based on a violation of the statute.

The trial court granted Parkin's motion holding that under section 504.18, landlords are not strictly liable for conditions they may well be unable to monitor.

## ISSUE

Does Minn.Stat. § 504.18 impose strict liability on a landlord for personal injuries to a tenant while on the leased premises?

## ANALYSIS

Meyers contend the issue is not whether section 504.18, subd. 1(a) imposes strict liability on a landlord for personal injuries to a tenant. Rather, they contend that the issue is what contractual remedy is available for breach of the covenant of fitness as embodied in section 504.18.

■ At common law, in the absence of any covenant or agreement in the lease to repair, and where there is no fraud, misrepresentation, or concealment by the lessor, there was no implied warranty that the leased premises were fit for the purposes for which they were rented, or covenant to put them in repair or to keep them so. *Harpel v. Fall*, 63 Minn. 520, 524, 65 N.W. 913, 914 (1896). This rule of caveat emptor required a tenant to investigate the premises in order to determine their adaptability to the purposes for which they had been rented.

■ Likewise, in the absence of fraud, misrepresentation or deceit, a landlord was not responsible to his tenant for injuries resulting from a defective condition of the premises. *See Normandin v. Freidson*, 181 Minn. 471, 474, 233 N.W. 14, 15 (1930); *Ames v. Brandvold*, 119 Minn. 521, 523, 138 N.W. 786, 787 (1912). An exception to this rule was established in *Johnson v. O'Brien*, 258 Minn. 502, 105 N.W.2d 244 (1960), which held:

[W]here a landlord has information which would lead a reasonably prudent owner exercising due care to suspect that danger exists on the leased premises at the time the tenant takes possession, and that the tenant exercising due care would not discover it for himself, then he must at least disclose such information to the tenant.

*Id.* at 506, 105 N.W.2d at 247 (footnote omitted). Thereafter, "actual knowledge" of defects on leased premises was no long-er a prerequisite to the liability of a landlord. *Id. See also Breimhorst v. Beckman*, 227 Minn. 409, 35 N.W.2d 719 (1949). The theory of this rule was based in tort, not contracts.

In 1971, the Legislature enacted Minn. Stat. § 504.18 which provides for several covenants which are to be read into every residential lease, and which cannot be waived by the parties. It provides, in pertinent part:

Subd. 1. In every lease or license of residential premises, whether in writing or parol, the lessor or licensor covenants:

(a) That the premises and all common areas are fit for the use intended by the parties.

(b) To keep the premises in reasonable repair during the term of the lease or license, except when the disrepair has been caused by the willful, malicious, or irresponsible conduct of the lessee or licensee or a person under his direction or control.

(c) To maintain the premises in compliance with the applicable health and safety laws of the state and of the local units of government where the premises are located during the term of the lease or license, except when violation of the health and safety laws has been caused by the willful, malicious, or irresponsible conduct of the lessee or licensee or a person under his direction or control.

. . . . .

Subd. 3. This section shall be liberally construed, and the opportunity to inspect the premises before concluding a lease or license shall not defeat the covenants established herein.

. . . . .

Subd. 5. Nothing contained herein shall be construed to alter the liability of the lessor or licensor of residential premises for injury to third parties.

Minn.Stat. § 504.18 (1982).

Meyers argue this section altered the common law rules governing liability of landlords for injuries to a tenant caused by hidden defects by eliminating the require-

ment that the landlord knew or should have known of the dangerous condition.

On its face, the statute purports to impose strict liability on a landlord without regard to his knowledge of the defect. The one Minnesota case interpreting section 504.18 is *Fritz v. Warthen*, 298 Minn. 54, 213 N.W.2d 339 (1973). In *Fritz* our Supreme Court held that the statutory covenants of habitability embodied in section 504.18, and the covenant to pay rent, were mutually dependent rather than independent, thereby absolving the tenant from his rent obligation when the landlord has breached the statutory covenants. *Id.* at 59, 213 N.W.2d at 342. The court explained:

> The legislative objective in enacting the implied covenants of habitability is clearly to assure adequate and tenantable housing within the state. That objective is promoted by permitting breach of the statutory covenants to be asserted as a defense in unlawful detainer actions. If a landlord is entitled to regain possession of the premises in spite of his failure to fulfill the covenants, this purpose would be frustrated. A tenant would be given little choice in asserting his statutory right to tenantable housing if his only alternatives were abandonment of the premises or continued payment of rent to which the landlord is not entitled because of the conditions.

*Id.* at 59–60, 213 N.W.2d at 342.

 It seems clear that the legislature did not intend to alter a landlord's tort liability but only to require a landlord to covenant to keep leased residential premises in reasonable repair, fit for their intended use and maintained in compliance with applicable health and safety laws. Prior to the enactment of section 504.18, these covenants of habitability had to be individually negotiated on a lease by lease basis. *See generally Harpel v. Fall*, 63 Minn. 520, 65 N.W. 913 (1896). They are now made part of every residential lease.

A number of states have provided, in residential leases, covenants of habitability comparable to section 504.18. In *Evans v. Van Kleek*, 110 Mich.App. 798, 314 N.W.2d 486 (Mich.Ct.App.1981), the plaintiff alleged that the defendant violated the Michigan landlord and tenant statute, section 554.139, by improperly wiring residential premises, causing a fire. The defendant had installed the wiring and plaintiff, therefore, contended that defendant should have known the wiring was improper and that he failed to warn the plaintiffs. The Michigan Court of Appeals held that these allegations raised substantial fact questions which could not be disposed of by summary judgment. *Id.* at 802, 314 N.W.2d 488–89. Thus, scienter remained an essential prerequisite to the liability of a landlord despite the covenants of habitability contained in the Michigan statute.

There is, however, another provision of Minn.Stat. § 504.18 that does not seem to require scienter. Subdivision 1(c) requires the lessor "[t]o maintain the premises in compliance with the applicable health and safety laws of the state and of the local units of government where the premises are located during the term of the lease ...."

What would be the situation if a landlord had purchased a building without knowledge of defective wiring? The premises would certainly be a violation of an electrical code. Would not the language of subd. 1(c) impose a type of strict liability upon the landlord? It would seem so, except the problem still remains as to what remedy is afforded a tenant under section 504.18.

Our supreme court has allowed the statutory covenants of habitability to be asserted as a defense to an unlawful detainer action. *Fritz v. Warthen*, 298 Minn. 54, 213 N.W.2d 339 (1973). It also authorized an action by the tenant to recover damages for breach of the covenants by the landlord. *Id.* at 58, 213 N.W.2d at 341. These remedies go beyond the mere covenant to pay rent and the reciprocal duty to repair and maintain. But they do not appear to extend liability of a landlord to money damages for injuries received by a tenant as a result of an unknown defect in the rented premises.

New York has seemingly answered this question. In *Curry v. New York City Housing Authority*, 77 A.D.2d 534, 430 N.Y.S.2d 305 (1980), the plaintiff contended the statutory covenants of habitability imposed strict liability upon landlords for injury or damages sustained as a result of the violation of the warranty of habitability. The New York Supreme Court held the warranty of habitability was not intended to extend the principle of strict liability to landlords with regard to wrongs that traditionally have been in the area of tort liability. *Id.* at 535, 430 N.Y.S.2d at 307. The court in *Curry* reasoned as follows:

> As the legislative history strongly indicates, the section was intended to codify principles that had been first developed in appellate decisions of other jurisdictions and had then come to receive increasing acceptance in the courts of the state.... This developing body of law reflected judicial distress at the palpable unfairness, as applied to contemporary conditions, of older principles of landlord and tenant law that effectively separated the right of the landlord to receive rent from his obligation to maintain the apartments decently in accordance with the requirements of law.

*Curry*, at 535, 430 N.Y.S.2d at 307. *See also Segal v. Justice Court Mutual Housing Cooperative, Inc.*, 108 Misc.2d 1074, 442 N.Y.S.2d 686 (1981).

### DECISION

The legislature did not intend to eliminate the element of scienter from the rule that a lessor has a duty to warn a lessee of any concealed defects the lessor knew or should have known existed.

Affirmed.