**Frank BILLS, Appellant,**

v.

**WILLOW RUN I APARTMENTS, a Partnership, Under the Law of the State of Minnesota, et al., Respondents.**

No. C4–94–2358.

Court of Appeals of Minnesota.

July 11, 1995.

Review Granted Sept. 20, 1995.

Michael C. Zender, Willmar, for appellant.

Emilio Guiliani, Jr., Hopkins, for respondents.

Considered and decided by HUSPENI, P.J., and NORTON and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge

Appellant Frank Bills (Bills) fell on the landing outside his apartment building, owned by respondent Willow Run I Apartments (Willow Run), a Minnesota partnership. He sued Willow Run for his injuries. During a jury trial, the trial court granted Willow Run's motion for a directed verdict because Bills presented no evidence that Willow Run knew the landing and handrails were dangerous. The trial court denied Bills's motion for a new trial, and he appeals. Because Willow Run's building code violations were negligence per se, and because a verdict in favor of Bills would not be manifestly contrary to the evidence or the law, we

reverse the directed verdict and remand for a new trial.

## FACTS

Bills fell on the exterior landing when he was leaving his apartment building during a sleet and ice storm. The landing and steps were covered with a thin coat of ice. He sued Willow Run for negligence, claiming that the landing and handrails did not comply with the 1970 Uniform Building Code (UBC). The threshold at the base of the door to the apartment building was six and three-quarter inches above the landing instead of one inch, as required by section 3303(h) of the UBC. The handrails were 91 inches instead of 88 inches apart, as required by section 3305(c) of the UBC. The building inspector expert witness testified that the apartment building violated both the 1970 and the 1973 versions of the UBC.[1]

At the close of Bills's case, the trial court granted Willow Run's motion for a directed verdict because there was no evidence that Willow Run had notice of the allegedly defective condition of the building. The trial court relied on the common law rule that a landlord's duty to disclose the defective condition to the tenant arises only when the landlord knows of a hidden defective condition on the premises. *See Johnson v. O'Brien,* 258 Minn. 502, 506, 105 N.W.2d 244, 247 (1960); *Oakland v. Stenlund,* 420 N.W.2d 248, 251 (Minn.App.1988), *pet. for rev. denied* (Minn. Apr. 20, 1988). The city engineer had inspected the apartment building's construction plans at the time of construction, and determined that they "conform[ed] to all applicable City Codes and Ordinances." The undisputed evidence showed that no other tenants had complained about the landing or the handrails, and that no other accidents had occurred. The trial court therefore directed a verdict in favor of Willow Run because there was insufficient evidence that Willow Run knew of the defective condition to present a fact question to the jury.

## ISSUE

To succeed in a negligence claim against a landlord, must a tenant show the landlord had knowledge of a building code violation that made the premises unsafe or is such a building code violation negligence per se?

## ANALYSIS

▇▇▇ When reviewing a directed verdict, this court determines whether, as a matter of law, there was sufficient evidence to present a fact question to the jury. *Nemanic v. Gopher Heating & Sheet Metal, Inc.,* 337 N.W.2d 667, 669 (Minn.1983).

> A directed verdict should be granted only where, in light of the evidence as a whole, it would be the duty of the trial court to set aside a contrary verdict as manifestly contrary to the evidence or to the law. * * * [T]he trial court must accept as true the evidence favorable to the adverse party and all reasonable inferences which can be drawn from that evidence. [The appellate] court must apply the same standard.

*Claflin v. Commercial State Bank,* 487 N.W.2d 242, 247 (Minn.App.1992), *pet. for rev. denied* (Minn. Aug. 4, 1992) (citations omitted). The question of whether Willow Run's violation of the UBC is negligence per se is a matter of law for this court's determination. *See Raymond v. Baehr,* 282 Minn. 109, 113, 163 N.W.2d 51, 54 (1968) (court concluded as matter of law that violation of building code was negligence per se).

### I. Violation of Building Code as Negligence Per Se

Bills asserts that Willow Run's violation of the UBC was negligence per se because the violation resulted in the harm that the UBC was intended to prevent. He argues that had the landing and handrails complied with the UBC, he would not have slipped or he would have been able to catch himself on the railing.

▇▇▇ Violation of a statute is evidence of negligence

---

1. The trial court admitted into evidence the 1973 version of the UBC. We find no difference between the 1970 and 1973 versions of section 3305(c). Section 3303(h) of the 1970 version allows only one inch between the doorway threshold and landing, whereas the 1973 version of section 3303(h) allows two inches. *See* UBC § 3303(h) (1970); UBC § 3303(h) (1973).

if the persons harmed by that violation are within the intended protection of the statute and the harm suffered is of the type the legislation was intended to prevent. This rule is equally applicable to violation of ordinances. The statute or ordinance imposes a fixed duty of care, so its breach constitutes conclusive evidence of negligence.

*Pacific Indem. Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548, 558–59 (Minn.1977) (citations omitted) (furnace installer who violated city ordinance was negligent per se where violation resulted in fire); *see also Judd v. Landin*, 211 Minn. 465, 473, 1 N.W.2d 861, 865 (1942) (JNOV improperly granted when landlord violated building code requiring two handrails to prevent tenants' falls); *cf. Thies v. St. Paul's Evangelical Lutheran Church*, 489 N.W.2d 277, 280 (Minn.App.1992) (testimony about fire code inadmissible because plaintiff's injuries not proximately caused by hazards that fire code designed to eliminate). The statute or other legislative enactment may provide the standard of care if its purpose is

 (a) to protect a class of persons which includes the one whose interest is invaded, and

 (b) to protect the particular interest which is invaded, and

 (c) to protect that interest against the kind of harm which has resulted, and

 (d) to protect that interest against the particular hazard from which the harm results.

Restatement (Second) of Torts, § 286 (1965).

 The preface to the 1970 UBC states that "the Uniform Building Code is dedicated to the development of better building construction and greater safety to the public." Clearly, Bills, a tenant, was within the intended protection of the statute. Willow Run's counsel conceded at trial that there was evidence of building code violations. Moreover, in the absence of a statutory provision providing that the violation is only "prima facie evidence of negligence," the violation shall be deemed negligence per se. *See Butler v. Engel*, 243 Minn. 317, 322, 68 N.W.2d 226, 230 (1954). Because Bills's accident was the type that the UBC was intend-

ed to prevent, and because the UBC does not provide that a violation is only prima facie evidence of negligence, we conclude that the code violations constituted negligence per se.

 Willow Run asserts that because its plans were approved prior to construction, it cannot be liable for code violations of which it had no knowledge. We disagree. A defendant's lack of knowledge of noncompliance with a statutory standard of conduct or failure to appreciate the inherent dangers of noncompliance, does not excuse a failure to comply with that standard. *See Lynghaug v. Payte*, 247 Minn. 186, 197, 76 N.W.2d 660, 667 (1956). We believe that Willow Run was negligent per se, regardless of its knowledge of the code violations.

## II. *Landlord's Duty to Tenant*

 Willow Run urges this court to affirm the directed verdict based on cases which hold a landlord has a limited duty to warn a tenant only of hidden dangers on the premises. *See Johnson*, 258 Minn. at 506–07, 105 N.W.2d at 247; *Oakland*, 420 N.W.2d at 251 (landlord had no duty to warn tenants' guest when tenants also knew of dangerous conditions). Willow Run also cites *Meyer v. Parkin*, 350 N.W.2d 435, 437–38 (Minn.App. 1984), *pet. for rev. denied* (Minn. Sept. 12, 1984), which holds that a landlord's actual knowledge of defects is not required, and that the tenant need only show the landlord had constructive knowledge of defective conditions. *Id.* at 438. We believe that the cases upon which Willow Run relies are factually distinguishable from this case.

In *Meyer*, two tenants sued their landlord for their child's injuries from exposure to formaldehyde in a rented apartment. *Id.* at 436. The tenants did not plead violation of a specific building code or ordinance, but based their action on the covenant of habitability, which requires that leased residential premises be "fit for the use intended by the parties." *Id.* (quoting Minn.Stat. § 504.18, subd. 1(a) (1982)). The court noted that the covenant of habitability only provides tenants with a defense to an unlawful detainer action for refusal to pay rent. *Id.* at 438. But the

court declined to extend tenants' remedies based on strict liability:

> It seems clear that the legislature did *not intend to alter a landlord's tort liability* but only to require a landlord to covenant to keep leased residential premises in reasonable repair, fit for their intended use and maintained in compliance with applicable health and safety laws.

> \* \* \* \* \* \*

> [The statutory covenants of habitability] do not appear to extend liability of a landlord to money damages for injuries received by a tenant as a result of an unknown defect in the rented premises.

*Id.* Although *Meyer* limited tenants' remedies under statutory covenants of habitability, it did not eliminate claims by tenants for injuries from specific building code violations of which the landlord is unaware. As the supreme court has stated, a "statute or ordinance imposes a fixed duty of care, so its breach constitutes conclusive evidence of negligence." *Pacific Indem.,* 260 N.W.2d at 559.

In *Oakland,* 420 N.W.2d at 249, the tenant's guest sued the landlord for injuries she sustained from a fall down the basement steps. An architect, who inspected the basement steps, stated that the stairway violated "every recognized design standard for each and every one of its component parts," including the applicable building code. *Id.* at 250, 252. The *Oakland* court's analysis focused on the narrow issue of whether the covenant of habitability and the building code affect a landlord's duty to warn a tenant's guest of a known defect. The court applied the common law rule that the landlord has no duty to warn of known defects, concluding it was the tenant's duty to warn its guest of the dangerous basement steps. *Id.* at 251. Furthermore, the court stated that the covenant of habitability and the building codes do not impose on the landlord a duty to warn the tenant's guest when the tenants also know of the hazardous condition. *Id.* at 252. Under *Oakland,* Willow Run would have owed no duty to warn Bills of code violations that create obviously dangerous conditions. In this case, however, the code violations resulted in hidden or unanticipated dangers.

## DECISION

Minnesota courts have unequivocally ruled that a code violation is negligence per se when the violation results in the harm the code was designed to prevent. Here, Willow Run's counsel admitted there was evidence of a building code violation and there was expert testimony that the code requirements were intended to prevent injuries from falls on steps. Having established negligence per se, there is sufficient evidence to present a factual question to the jury of whether the code violations created a hidden or unknown danger which proximately caused Bills's injuries. *See Raymond,* 282 Minn. at 113, 163 N.W.2d at 54 (where code violation is negligence per se, factual issue exists as to whether violation proximately caused injuries). We reverse and remand because a verdict in favor of Bills would not be manifestly contrary to the evidence or the law. *See Claflin,* 487 N.W.2d at 247, 251 (reversing directed verdict).

**Reversed and remanded.**