**Shawn Stevensen WILLIAMS, Plaintiff and Appellant,**

v.

**Kenneth O. MELBY, Charlotte B. Melby, Melby-Trayner Properties, a Utah partnership, Kenneth O. Melby and Herbert Trayner, partners, Defendants and Respondents.**

**Kenneth O. MELBY, Charlotte B. Melby, Melby-Trayner Properties, a Utah partnership, Kenneth O. Melby and Herbert Trayner, partners, Third-Party Plaintiffs,**

v.

**James WILLIAMS, Jr., Third-Party Defendant.**

No. 19525.

Supreme Court of Utah.

March 29, 1985.

Walter P. Faber, Brian W. Burnett, Salt Lake City, for plaintiff and appellant.

Tim Dalton Dunn, Salt Lake City, for Trayner.

Darwin C. Hansen, Bountiful, for Melby.

STEWART, Justice:

Plaintiff appeals from a summary judgment against her claim for damages for personal injury caused by the alleged negligent design, construction, and maintenance of a window through which she fell and injured herself. We reverse and remand.

The plaintiff and her husband moved into the Cambridge Apartments in September, 1980. The apartment owners were the defendants Kenneth O. and Charlotte Melby. The apartments were constructed by the defendant Herbert Trayner, a general contractor who chose the design, selected the mechanical engineer to draw the plans, and approved the plans for the apartments. The plaintiff's apartment, which was located on the third story, was designed with a mansard roof. As a result of the design, the outside wall of plaintiff's bedroom slopes inward and the bedroom window, which is vertical, stands out from the wall and protrudes into the room. The glass part of the window is some twenty-two inches off the floor.

Plaintiff and her husband inspected the room several times before she signed the lease and moved in. However, it was not until she moved in that she discovered that the sloping wall required her king-size, four-poster bed to be located so that a person arising from the bed would be next to the window.

During the night of January 19, 1981, at about 2:30 a.m., plaintiff, who had been sleeping on her husband's side of the bed, arose from the bed while disoriented, stumbled, and fell through the closed window three stories to the ground. She had no exact awareness of how she fell. The fall broke her back, causing permanent paralysis from the waist down. A physician's affidavit, submitted by plaintiff, stated that plaintiff, after waking from a deep sleep, suffered momentary dizziness and disorientation, which probably caused the fall.

Plaintiff sued the Melbys and Trayner, who moved for summary judgment. Plaintiff submitted the affidavit of an architect, which stated that the design of the bedroom window created an unreasonable risk to an occupant's safety. The trial court granted the defendants' motions for summary judgment.

Plaintiff appeals, contending that the trial judge erred in granting the summary judgment motion because (1) an issue of fact existed as to whether the window was defectively designed, constructed and maintained; (2) defendant Melby breached a duty of reasonable care in not making the window safe against the possibility of someone falling through it; and (3) Trayner was more than a contractor following someone else's plans and should therefore be liable for defects in the building.

I.

Summary judgment should be granted with great caution in negligence cases. See Bowen v. Riverton, Utah, 656 P.2d 434 (1982); Lamkin v. Lynch, Utah, 600 P.2d 530 (1979); Rees v. Albertson's, Inc., Utah, 587 P.2d 130 (1978). Plaintiff asserts that the architect's affidavit raised an issue of fact as to whether the building was negligently designed, constructed, and maintained. The defendants attack the sufficiency of the affidavit to raise a question of fact, asserting that the affidavit merely states a conclusion which is insufficient to preclude the granting of a summary judgment motion.

An affidavit which merely reflects the affiant's unsubstantiated conclusions and which fails to state evidentiary facts is insufficient to create an issue of fact. Webster v. Sill, Utah, 675 P.2d 1170 (1983); Walker v. Rocky Mountain Recreation Corp., 29 Utah 2d 274, 508 P.2d 538 (1973). Here, however, a perusal of architect Stanley Crawley's affidavit shows that he alleges the facts upon which his conclusion was based. The affidavit states:

First, the window sill height of 22″ is even with or below the knee of the average person and so increases the possibility that anyone leaning into the window will be off balance and fall outward.

Second, the window and window sill project into the room and are separate

from the outside wall surface, which increases the possibility that the user might stumble against the sill, lose his or her balance, and fall outward....

Third, the third story location of the apartment, some 25 feet above the ground surface, poses a potential threat to the safety of occupants that is quite different than would be the case for a ground level apartment.

We think the affidavit was sufficient to raise an issue of fact as to whether negligence in the design, construction, or maintenance of the window created an unreasonable risk to occupant safety.

## II.

■ The essential elements of a negligence action are: (1) a duty of reasonable care owed by the defendant to plaintiff; (2) a breach of that duty; (3) the causation, both actually and proximately, of injury; and (4) the suffering of damages by the plaintiff. *Flowers v. K Mart Corp.*, 126 Ariz.App. 495, 616 P.2d 955 (1980); *Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135 (1980); *ABC Builders, Inc. v. Phillips*, Wyo., 632 P.2d 925 (1981); W. Prosser, *The Law of Torts* § 130 (4th ed. 1971). *See DCR Inc. v. Peak Alarm Co.*, Utah, 663 P.2d 433 (1983).

At common law a landlord was not liable to his lessee for physical harm caused by a dangerous condition existing on the land when the lessee took possession. *Restatement (Second) of Torts* § 356 (1965); W. Prosser, *supra*, § 63 at 400; 52 C.J.S. *Landlord and Tenant* § 417 (3)(a) (1968). Over time, the general rule was modified to make a landlord liable in certain circumstances for injuries resulting from dangerous conditions on leased premises. Thus, a lessor could be liable for negligence if: (1) he had contracted to repair the premises; (2) there was a hidden

or latently dangerous condition which was known to the lessor and caused an injury; (3) the premises were leased for purposes of admitting the public and a member of the public was injured; or (4) part of the premises was retained under the lessor's control, but was open to the use of the lessee. *Restatement (Second) of Torts* sections 357–62 (1965); W. Prosser, *supra*, section 63. *See, e.g., Wilson v. Woodruff,* 65 Utah 118, 235 P. 368 (1925) (landlord's duty to maintain stairways). The landlord was, however, not liable for obvious and patent defects existing on the premises at the commencement of the lease. *E.g., Lemley v. Penner,* 230 Kan. 25, 630 P.2d 1086 (1981) (child fell through weak interior house wall); *Tillotson v. Abbott,* 205 Kan. 706, 472 P.2d 240 (1970) (tenant fatally burned by open-faced radiant gas heater); *Hanson v. Luft,* 24 Cal.Rptr. 681, 374 P.2d 641, 58 Cal.2d 443 (1962) (5-year-old burned when clothes ignited by open gas heater). *Cf. Noble v. Worthy,* D.C.App., 378 A.2d 674 (1977) (22-month old child fell from fifth-floor balcony). *But see Hall v. Warren,* Utah, 632 P.2d 848, 851 n. 2 (1981).

■ The common law duty of a landlord has been expanded in virtually every state, either judicially or by statute, beyond the narrow common law categories. *See generally* Browder, *The Taming of A Duty— The Tort Liability of Landlords,* 81 Mich. L.Rev. 99, 112–13 (1982). Utah has not held that there is an implied warranty of habitability in residential leases, and we decline to address the issue now because it has not been raised, but this Court has charged landlords with a duty to exercise reasonable care toward their tenants in all circumstances. Landlord liability is no longer limited by the artificial categories developed by the common law.[1] *Hall v. Warren,* Utah, 632 P.2d 848 (1981); *Ste-*

---

1. In *Stephenson v. Warner,* Utah, 581 P.2d 567, 568 (1978), we stated:

It is not to be doubted that a landlord is bound by the usual standard of exercising ordinary prudence and care to see that premises he leases are reasonably safe and suitable for intended uses, nor that under appropriate circumstances he may be held liable for injuries caused by any defects or dangerous conditions which he created, or of which he was aware, and which he should reasonably foresee would expose others to an unreasonable risk of harm.

*phenson v. Warner,* 581 P.2d 567 (1978). *Accord Cummings v. Prater,* 95 Ariz. 20, 386 P.2d 27 (1963); *Brennan v. Cockrell Investments, Inc.,* 35 Cal.App.3d 796, 111 Cal.Rptr. 122 (1973); *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984); *Young v. Garwacki,* 380 Mass. 162, 402 N.E.2d 1045 (1980); *Curry v. New York City Housing Authority,* 77 A.D.2d 534, 430 N.Y.S.2d 305 (1980); *Pagelsdorf v. Safeco Insurance Co.,* 91 Wis.2d 734, 284 N.W.2d 55 (1979).

The expanded liability of landlords under modern law has evolved from recognition of the fact that a residential lessee does not realistically receive an estate in land. Rather, the lessee's rights, liabilities and expectations are more appropriately viewed as governed by contract and general principles of tort law. In *Javins v. First National Realty Corp.,* 428 F.2d 1071, 1074 (D.C.Cir.1970) (footnote omitted), the court stated:

> The city dweller who seeks to lease an apartment on the third floor of a tenement has little interest in the land 30 or 40 feet below, or even in the bare right to possession within the four walls of his apartment. When American city dwellers, both rich and poor, seek "shelter" today, they seek a well known package of goods and services—a package which includes not merely walls and ceilings, but also adequate heat, light and ventilation, serviceable plumbing facilities, secure windows and doors, proper sanitation, and proper maintenance.

■ However, a landlord is not an insurer of the safety of his tenants, and an injury caused by a defect in the premises does not automatically result in landlord liability. *Eaton v. Savage,* 28 Utah 2d 353, 502 P.2d 564 (1972).

■ In the instant case, the landlord's duty was to use reasonable care. *Hall v. Warren,* Utah, 632 P.2d 848 (1981); *Stephenson v. Warner,* Utah, 581 P.2d 567 (1978). Indeed, since the landlord retained control over the outside walls under the terms of the lease, he might well have had a duty of reasonable care even under the

old law, to maintain safe exterior areas such as walls and windows over which he retained control. *See generally* Annot., "Landlord's Liability for Injury or Death Due to Defects in Areas of Building (Other Than Stairways) Used in Common by Tenants," 65 A.L.R.3d 14 (1975). That duty may be breached by the defective design and construction of the premises. *See, e.g., Ultimate Computer Services, Inc. v. Biltmore Realty Co.,* 183 N.J.Super. 144, 443 A.2d 723 (1982) (damage to computers by defectively designed leaking roof).

A particularized statement of that duty is found in 2 F. Harper and F. James, *The Law of Torts* § 27.17 at 1516, 1518 (1956) (footnotes omitted):

> The landlord is also under a similar duty [of reasonable care to make conditions reasonably safe] to maintain those parts of the structure which remain in his control but are needed ·for the safety or protection of the leased premises, such as foundations, outside walls, roofs and the like.

### III.

Whether a defendant has breached the required standard of care is generally a question for the jury, *Jackson v. Dabney,* Utah, 645 P.2d 613 (1982), to be determined by whether the injury which occurred was of the type that fell within the zone of risk created by the defendant's negligent conduct. "The care to be exercised in any particular case depends upon the circumstances of that case and on the extent of foreseeable danger involved and must be determined as a question of fact." *DCR Inc. v. Peak Alarm Co.,* Utah, 663 P.2d 433, 435 (1983) (footnotes omitted). *See also Eaton v. Savage,* 28 Utah 2d 353, 502 P.2d 564 (1972); *Wheeler v. Jones,* 19 Utah 2d 392, 431 P.2d 985, 988 (1967).

■ It appears to be true that the window through which the plaintiff fell was constructed in compliance with the applicable building code, was originally designed by a licensed architect, and was put in the plans by a mechanical engineer. It also

appears that the glass in the window complied with building code requirements. Nevertheless, compliance with the building code does not *ipso facto* preclude a finding of a design defect. *Beeks v. Joseph Magnin Co.*, 194 Cal.App.2d 73, 14 Cal.Rptr. 877, 880 (1961); *Christau v. Arlington Park-Washington Park Race Tracks Corp.*, 104 Ill.App.3d 257, 60 Ill.Dec. 21, 432 N.E.2d 920 (1982).

If a reasonably prudent person should have known, or could have learned by the exercise of reasonable care, that the design or construction of the window constituted a dangerous condition, the landlord could be held liable for not taking adequate safety precautions. That no one had previously fallen through the window, does not conclude the issue. "The mere fact that a particular kind of accident has not happened before does not ... show that such accident is one which might not reasonably have been anticipated." *Weirum v. RKO General, Inc.*, 15 Cal.3d 40, 539 P.2d 36, 40, 123 Cal.Rptr. 468, 472 (1975) (*quoting Ridley v. Grifall Trucking Co.*, 136 Cal. App.2d 682, 289 P.2d 31, 34 (1955)).

The instant case is not unlike *Becker v. IRM Corp.*, 144 Cal.App.3d 321, 192 Cal. Rptr. 570 (1983). In *Becker* the plaintiff was injured when he slipped and fell through an untempered glass shower door in his apartment. The difference between tempered glass and untempered glass was discernible only on close inspection. The court set aside a summary judgment because the case presented a factual issue as to whether the landlord could have learned of the defective condition of the property. Similarly here, a trier of fact might find that the landlord should have known that a defective condition existed and should have taken precautions to avert the risk. Therefore, since we cannot hold as a matter of law that the plaintiff was equally or more negligent than the Melbys, a triable issue of fact exists as to whether the Melbys breached their duty of care.

■ We are cognizant of the fact that the plaintiff obviously knew of the particular window design. But it does not appear that she knew of the thickness of the glass in the window or that its strength was such that it would not hold if someone inadvertently fell against it. Even though plaintiff may have been negligent, summary judgment is an altogether inappropriate procedure for assessing her degree of negligence against the negligence of the defendants. In the days when contributory negligence was an absolute defense in a negligence action, summary judgment could be used to dispose of negligence actions without depriving a plaintiff of his right to a trial on the merits. Now, however, contributory negligence is not an absolute defense, and summary judgment is rarely an appropriate remedy for resolving negligence actions.

Finally, we note that defendants place much emphasis upon the fact that it was the plaintiff and her husband who placed their furniture in the position it was in the room, although there was very little choice in the matter because of the size of the room and the size of the furniture. The defendants assert that plaintiff's conduct, being subsequent in time to the design and construction of the window, was an intervening proximate cause that superseded whatever cause may have flowed from their negligence. They rely on *Cooke v. Mortensen*, Utah, 624 P.2d 675 (1981), and *Kimiko Toma v. Utah Power & Light Co.*, 12 Utah 2d 278, 365 P.2d 788 (1961), for the proposition that a subsequent cause to that for which the defendant is responsible is, as a matter of law, a superseding cause.

■ The issue of what constitutes a superseding cause can not be determined by the simplistic formula that the cause which occurs last in time is, as a matter of law, a superseding cause. Indeed, conduct may be negligent simply because subsequent negligent conduct by another is foreseeable. Moreover, the quality and strength of the various causes that produce a result may bear both on what is "proximate" and on the issue of negligence. In *Harris v. Utah Transit Authority*, Utah, 671 P.2d 217, 219 (1983), we stated the law of subsequent superseding causes to be as follows:

The law of superseding causation is, as a general proposition, more easily stated than applied. A person's negligence is not superseded by the negligence of another if the subsequent negligence of another is foreseeable. This Court in *Jensen v. Mountain States Telephone and Telegraph Co.*, Utah, 611 P.2d 363 (1980), adopted the rule stated in the *Restatement (Second) of Torts* § 447 (1965):

> The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
>
> (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
>
> (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or
>
> (c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

The same general rule is stated by Professor Prosser as follows:

> The risk created by the defendant may include the intervention of the foreseeable negligence of others.... [T]he standard of reasonable conduct may require the defendant to protect the plaintiff against 'that occasioned negligence which is one of the ordinary incidents of human life and therefore to be anticipated.'

Prosser, *The Law of Torts* § 44 at 274 (4th ed. 1971) (footnotes omitted).

Accordingly, we overrule the rule of superseding cause applied in *Cooke v. Mortensen*, Utah, 624 P.2d 675 (1981), and *Kimiko Toma v. Utah Power & Light Co.*, 12 Utah 2d 278, 286, 365 P.2d 788 (1961).

## IV.

The issue of the contractor's liability should also be submitted to the finder of fact. Defendant Trayner cites *Leininger v. Stearns-Roger Manufacturing Co.*, 17 Utah 2d 37, 404 P.2d 33 (1965), for the rule that a contractor is not liable to third parties for defects in a building. However, in *Leininger*, the contractor was merely a conduit through which the defective product passed. The contractor had no authority to use his own judgment in the selection of the product used.

This case is distinguishable. Defendant Trayner was not handed a set of plans and told what to build. He chose the design, he approved the plans, and he was therefore responsible to avoid unreasonable risks created in the final product. The principle to which we adhere was relied upon in *Stephens v. Stearns*, 106 Idaho 249, 678 P.2d 41 (1984), where the builder failed to install handrails on an interior apartment stairway, and the court, noting the duty of care owed by a builder, held that a jury question existed on the builder's liability. *Id.*, 678 P.2d at 48. *See also Leininger v. Stearns-Roger Manufacturing Co., supra.*

Whether defendant Trayner was negligent in the construction of the Cambridge Apartments, and, if so, whether his negligence was greater than that of plaintiff's, are questions for the jury.

Reversed and remanded for trial. Costs to appellant.

HALL, C.J., and DURHAM and ZIMMERMAN, JJ., concur.

HOWE, J., concurs in the result.