In re HEMINGWAY TRANSPORT,
INC., and Bristol Terminals, Inc.

WOBURN ASSOCIATES

v.

Herbert C. KAHN, Trustee for
Hemingway Transport, Inc.
and Bristol Terminals, Inc.

Civ. A. No. 90–12408–Z.

United States District Court,
D. Massachusetts.

March 26, 1991.

Thomas V. Urmy, Jr., Michelle H. Blauner, Shapiro, Grace & Haber, Boston, Mass., for Woburn Associates, appellant.

William Francis Macauley, Martin P. Desmery, Craig & Macauley, Boston, Mass., for Herbert C. Kahn, Trustee for Hemingway Transport, Inc., and Bristol Terminals, Inc., appellee.

Louis N. Massery, Cooley, Manion, Moore & Jones, Boston, Mass., for Juniper Development Group, appellee.

MEMORANDUM OF DECISION

ZOBEL, District Judge.

This appeal and cross-appeal arise out of an adversary proceeding commenced in

Bankruptcy Court, wherein Herbert C. Kahn, Trustee of Hemingway Transport, Inc. and Bristol Terminals, Inc. (collectively "Hemingway"), filed a third-party complaint against Woburn Associates for contribution under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9606(a) (1988). Woburn in turn filed a counterclaim against the Trustee for indemnification under a pre-petition lease agreement.

The undisputed facts are as follows: In June of 1974, Woburn, through its nominee, Burnwo Realty, Inc., purchased property located at 60 Olympia Avenue, Woburn, Massachusetts (the "Property") from an affiliate of Hemingway. Under an agreement dated June 26, 1974 (the "Lease"), Burnwo immediately leased the property back to Hemingway and then sold it to Woburn subject to the Lease. On July 29, 1980, Woburn conveyed the Property to Bristol, a wholly owned subsidiary of Hemingway. In connection with that sale, Bristol executed and delivered to Woburn a note in the amount of $100,000 plus interest, and granted Woburn a second mortgage on the Property.

In July 1982, Hemingway and Bristol filed for bankruptcy under Chapter 11 of the Bankruptcy Code. The cases were converted to Chapter 7 in November, 1983. In April, 1983, Hemingway sold the Property to Juniper Development Group.

On February 7, 1986, the United States Environmental Protection Agency issued an order pursuant to section 106(a) of CERCLA, directing Juniper to remove certain drums containing hazardous waste from the Property. Juniper complied with the order. In May of that year, Juniper brought suit against the Trustee seeking reimbursement or contribution under CERCLA for the cost of removing the drums. The Trustee, in turn, filed a third party complaint against Woburn on September 28, 1987 for contribution under CERCLA. Woburn answered the Trustee's third-party complaint and filed a two-count counterclaim. In its counterclaim, Woburn asserted (1) that it was entitled to be indemnified for all attorneys' fees and response costs by the Chapter 7 Trustee under the 1974 Lease, and (2) that it was entitled to damages for breach of the Lease.

Woburn subsequently filed a motion for summary judgment. On December 18, 1989, the Bankruptcy Court allowed Woburn's motion as to the Trustee's claims, holding that Hemingway "agreed [in the Lease] to indemnify and save harmless Woburn Associates against and from all liabilities [relating to the Property] ..., and that the language used by the parties evidences a clear and unequivocal intent to redistribute risks [under CERCLA]." *In re Hemingway Transport, Inc.*, 108 B.R. 378 (Bankr.D.Mass.1989) (quote from unpublished portion). In a decision dated July 31, 1990, the court (also on Woburn's summary judgment motion) next held that Woburn was entitled to indemnification for attorneys' fees and response costs (Count I of Woburn's counterclaim). The court ruled, however, that Woburn's claim for attorneys' fees was not entitled to administrative expense priority under the Bankruptcy Code; moreover, any claim for future response costs was disallowed pursuant to 11 U.S.C. § 502(e)(1)(B) (1988).

The Trustee appeals the December 18, 1989 decision of the court below, arguing (1) that the indemnity provisions of the Lease are inadequate to support recovery by Woburn, and (2) in any event, Woburn cannot recover on any claim arising from the Lease because it failed to file the necessary Proof of Claim against the Trustee in a timely fashion. Woburn, on the other hand, appeals the July 31 decision, specifically the Court's rulings that their claim for attorneys' fees is not entitled to administrative expense priority, and the disallowance of its claim for future response costs.

A district court, sitting in review, considers a bankruptcy court's decision to grant summary judgment *de novo*. *In re Two "S" Corp.*, 875 F.2d 240, 242 (9th Cir.1989). The standard for granting summary judgment in an adversarial bankruptcy proceeding is the same as in Rule 56(c). Bankruptcy Rule 7056, 11 U.S.C. (1988).

Summary judgment is appropriate if, in viewing the evidence in the light most favorable to the party opposing the motion, the court finds that there is no genuine issue of material fact. Fed.R.Civ.P. 56(c); *see also General Office Prods. Corp. v. A.M. Capen's Sons, Inc.,* 780 F.2d 1077, 1078 (1st Cir.1986).

*The Trustee's Appeals*

1. Transfer of CERCLA Liability under the Lease.

■ As a preliminary matter, it is clear that private parties may contract to transfer financial responsibilities under CERCLA. 42 U.S.C. § 9607(e)(1) (1988); *Mobay Corp. v. Allied–Signal, Inc.,* 761 F.Supp. 345 (D.N.J.1991). Moreover, a contract signed before the enactment of CERCLA in 1980 may act to waive claims under that statute. *Mobay,* at 355–357. Most courts facing the issue have found that very broad contractual provisions entered into before 1980 can constitute a waiver of CERCLA liability, if the contract demonstrates a clear intent to finally settle all liability issues arising from the sale of the property in question. *See, e.g., FMC Corp. v. Northern Pump Co.,* 668 F.Supp. 1285, 1292 (D.Minn.1987), *appeal dismissed,* 871 F.2d 1091 (8th Cir.1988); *United States v. South Carolina Recycling & Disposal, Inc.,* 653 F.Supp. 984, 1011–13 (D.S.C.1984), *aff'd in part and vacated in part sub nom. United States v. Monsanto Co.,* 858 F.2d 160 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989). On the other hand, courts have agreed that purchases of a business "as is," without more, do not demonstrate this clear intent, and therefore do not absolve a seller from CERCLA liability. *See, e.g., Amland Properties Corp. v. Aluminum Co. of Am.,* 711 F.Supp. 784, 803 n. 20 (D.N.J.1989). Some courts have gone even further, holding that a more specifically targeted waiver of environmentally based claims is necessary to transfer CERCLA liability. *See, e.g., Mobay,* at 355–357. This stricter view, however, may in some situations lead to a result that does not reflect the intent of the parties. The better approach is that which allows broad, unambiguous transfers of liability to stand in those cases where the intent of the parties is clear.

■ The Lease in the instant case contains a very broadly worded indemnification clause. It provides, in relevant part:

Tenant will indemnify and save harmless Landlord against and from all liabilities, obligations, damages, penalties, claims, costs, charges and expenses, including reasonable architects' and attorneys' fees, which may be imposed upon, incurred by or asserted against Landlord by reason of any of the following occurring during the term of this Lease:

(a) any work or thing done in, on or about the Demised Premises or any part thereof;

(b) any use, nonuse, possession, occupation, condition, operation, maintenance or management of the Demised Premises or any part thereof, or any street, alley, sidewalk, curb, vault, passageway or space adjacent thereto used by Tenant in the conduct of the operation of the Demised Premises;

(c) any negligence on the part of Tenant or any of its agents, contractors, servants, employees, licensees or invitees;

(d) any accident, injury or damage to any person or property occurring in, on or about the Demised Premises or any part thereof or any street, alley, sidewalk, curb, vault, passageway or space adjacent thereto;

(e) any failure on the part of Tenant to perform or comply with any of the covenants, agreements, terms or conditions contained in this Lease on its part to be performed or complied with.

*In re Hemingway Transport, Inc.,* No. 86–1081, slip op. at 3 (Bankr.D.Mass. July 31, 1990).

The Lease does not contain any specific reference to environmentally based liability. Nevertheless, the inclusive and unequivocal language demonstrates a clear intent to transfer all liability to Heming-

way. The circumstances surrounding the execution of the agreement also corroborate Woburn's interpretation of the Lease. In an uncontroverted affidavit supporting Woburn's motion, Henry Pearce (one of Woburn's former partners) describes Woburn as a partnership formed solely for the purpose of entering into a sale/leaseback transaction with Hemingway. According to Mr. Pearce, the transaction between Woburn and Hemingway was essentially a financing transaction, in which Woburn was a passive investor; at no time did Woburn use, operate or have actual control over the Property.

■ The Trustee also advances two related arguments regarding the indemnity provision in the Lease. First, he contends that, under the common law in Massachusetts and elsewhere, a clause exempting a lessor from liability is presumed not to apply to liability outside the scope of the landlord-tenant relationship. The cases cited by the Trustee in support of his argument do not demonstrate the existence of such a presumption. Instead, they focus on the landlord-tenant relationship as evidence of the intent of the parties. That is, courts will define an indemnity agreement of uncertain scope with an eye toward the "basic objective" of the agreement; in a lease, that objective is the definition of "reciprocal obligations in the letting and occupancy of the property." *W.F. Zimmerman, Inc. v. Daggett & Ramsdell, Inc.*, 34 N.J.Super. 81, 84, 111 A.2d 448, 450 (1955). If then a party to the lease engages in wrongful conduct unrelated to those reciprocal obligations, the party is not relieved of liability by any provision in the lease. *See, e.g., Ultimate Computer Serv. v. Biltmore Realty Co.*, 183 N.J.Super. 144, 443 A.2d 723 (1982) (parties did not intend to absolve the landlord of liability for negligent design incurred in its capacity as general contractor, rather than as landlord). There was, in this case, no evidence before the Bankruptcy Court showing that the landlord (Woburn) engaged in any wrongdoing; more important, the Ten-

ant's liability arises from its use of the property and it is that liability which, under the Lease, cannot be passed on to the landlord.

■ Finally, the Trustee contends that, to the extent the Lease transfers liability under CERCLA, it is against public policy and void under Mass.Gen.Laws ch. 186, § 15 (1988). As Woburn points out, however, that statute limits a landlord's right to indemnity from the lessee only for liability arising out of "omission, fault, negligence or other misconduct of the lessor." Mass.Gen.Laws ch. 186, § 15. Again, there was no evidence tending to show any fault on the part of Woburn. Section 15 is therefore inapplicable.

## 2. Proof of Claim.

■ The Trustee contends that, since Woburn did not file a proof of claim against it "in connection with the indemnity provisions" of the Lease, Woburn may not now recover on such a claim.[1] This issue was apparently not presented to the Bankruptcy Court.

As Judge Caffrey observed in *Browner v. Rosen*, 56 B.R. 214, 216 (D.Mass.1985), "the sole remedy for asserting an affirmative right to monies owed by a bankrupt's estate, based on pre-petition debt, is to file proofs of claim." Woburn's claim "in connection with the indemnity provisions," however, did not arise pre-petition. Rather, Woburn claims reimbursement for attorneys' fees incurred in defending itself against the Trustee's suit for indemnification; this action was not commenced until late 1987, about five years after Hemingway filed for bankruptcy. Although Woburn claims this right of reimbursement as a part of the Lease, which was signed pre-petition, it obviously had no claim until the Trustee instituted these proceedings. It would be unjust to punish Woburn for its failure to predict this lawsuit several years before its filing; nor is there any logical reason to require a timely proof of claim under these circumstances.

---

**1.** On October 8, 1982, Woburn filed a proof of claim relating to Hemingway's indebtedness and obligations under the note and second mortgage.

Accordingly, the allowance of Woburn's motion for summary judgment is affirmed.

*Woburn's Appeals*

1. Award of Attorneys' Fees as Administrative Expense.

■ Woburn contends that the Trustee's suit for contribution under CERCLA was a product of intentionally frivolous litigation which ignored the plain language of the indemnity provisions in the Lease. As a result, it argues, the award of legal fees should be granted administrative priority status under the Bankruptcy Code.

It is true that other courts have held that attorneys' fees arising from the debtor's frivolous post-petition claims are properly treated as administrative expenses. *See In re Met–L–Wood Corp.*, 103 B.R. 972 (N.D. Ill.1989) (legal fees award entitled to administrative expense priority under § 726(b)); *In re E.A. Nord Co.*, 78 B.R. 289 (W.D.Wash.1987) (award of legal fees arising from frivolous claim entitled to administrative expense priority under § 503(b)(1)(A)).

The Trustee's claim in this case was not, however, frivolous. As noted above, courts facing the issue have disagreed as to whether very broad contractual provisions entered into before 1980 can constitute a waiver of CERCLA liability, or whether a more specifically targeted waiver of environmental-type claims is necessary. *See Mobay*, at 355–57 (to be effective as transfer of CERCLA liability, pre–1980 contract must specify that one party assumes environmental-type liabilities). The Bankruptcy Judge himself recognized the existence of a genuine issue,[2] and the mere fact that the Trustee lost below and on appeal does not convert a meritorious dispute into a frivolous claim.

Because the Trustee's claim against Woburn for clean-up costs was not frivolous, the legal fees Woburn incurred in defending the suit were not caused by the sort of intentionally mischievous post-petition conduct which might trigger administrative expense priority. *See Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968) (tort claims arising against the debtor during a Chapter 11 reorganization are entitled to administrative expense priority). Accordingly, the ruling below denying administrative expense priority under § 503(b)(1)(A) to the award of legal fees is affirmed.

2. Disallowance of Claims under 11 U.S.C. § 502(e)(1)(B).

For the reasons given in this Court's decision, dated March 26, 1991, in Civil Action Nos. (90–10302–Z; 90–10431–Z; 90–10432–Z), Woburn's claims for future response costs are properly disallowed as contingent claims under 11 U.S.C. § 502(e)(1)(B). I therefore affirm the Bankruptcy Court with respect to this issue.

*Conclusion*

For the foregoing reasons: (1) the indemnity provisions of the Lease effectively transferred liability under CERCLA to Hemingway; (2) Woburn may recover on its claim for attorneys' fees, notwithstanding its failure to file a timely proof of claim against Hemingway with respect to the Lease; (3) the attorneys' fees won by Woburn are not entitled to administrative expense priority; and (4) Woburn's claims for future response costs under CERCLA are disallowed as contingent claims pursuant to 11 U.S.C. § 502(e)(1)(B). The judgment of the Bankruptcy Court is therefore affirmed.

---

2. At the evidentiary hearing on the value of attorneys' fees incurred by Woburn, held on May 29, 1990, Judge Gabriel remarked, "... [T]here was a lot of problem in trying to determine that issue [of whether the Lease was an effective transfer of CERCLA liability]. To what extent does the Court hold a party, six or seven years after they've entered into a contract, to a statute which creates this type of all-inclusive liability which was never thought of, never conceived, never envisioned by the two contracting parties, let alone anybody else in the world?"