**Dora SCHREITER, Plaintiff and Appellant,**

v.

**WASATCH MANOR, INC., Defendant and Appellee.**

**No. 920573–CA.**

Court of Appeals of Utah.

March 11, 1994.

Ronald E. Dalby, Matthew J. Storey, and Brian S. King, Salt Lake City, for plaintiff and appellant.

Gary B. Ferguson, Salt Lake City, for defendant and appellee.

Before DAVIS, JACKSON and ORME, JJ.

## OPINION

ORME, Associate Presiding Judge:

Plaintiff Dora Schreiter appeals the trial court's grant of defendant Wasatch Manor's motion for summary judgment on her negligence claim. Schreiter argues that the trial court erred in excluding certain evidence and

in ruling that she had not presented a prima facie case. We reverse the trial court on both counts and remand for trial.

## FACTS

■ In reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in a light most favorable to the nonmoving party. *Higgins v. Salt Lake County*, 855 P.2d 231, 233 (Utah 1993). We recite the facts in this case accordingly.

In the early morning of February 7, 1990, a fire broke out on the tenth floor of Wasatch Manor, an eleven-story apartment building occupied by retirees. Plaintiff Schreiter, an eighty-three year old woman, resided on the tenth floor of Wasatch Manor at the time the fire broke out. The fire started in the room of another tenant of Wasatch Manor, who had fallen asleep while smoking in bed.

Schreiter was injured when smoke from the fire filled her apartment. She suffered from smoke inhalation, which allegedly resulted in medical expenses in excess of $50,-000 and left her with a significant degree of permanent disability. The fire also resulted in two deaths and caused extensive damage to the tenth floor, the repair cost of which was approximately $350,000.

Wasatch Manor allowed smoking in the building, but prohibited tenants from smoking in the common areas. Smoking tenants were instructed to smoke only in their apartments. Burton Miller, the manager of Wasatch Manor, was aware that smokers lived in the building, and had periodically expressed concern that the tenants' smoking posed a potential fire hazard. The risk of injury or death was heightened by the fact that Wasatch Manor did not require tenants, including smokers, to leave the complex once they became non-ambulatory.

At the time of the fire, Wasatch Manor did not have a fire sprinkler system. After the fire, Wasatch Manor obtained an estimate which placed the cost of installing such a system at $185,000 to $200,000. Wasatch Manor conceded that a fire sprinkler system would have been effective in limiting the scope and intensity of the fire. However, the building code in effect when the building was constructed did not require such a system, and Wasatch Manor had passed yearly inspections conducted by the Salt Lake City Fire Department.

Plaintiff Schreiter brought this action against Wasatch Manor, claiming its negligence in failing to install a fire sprinkler system caused her injuries. Wasatch Manor moved for summary judgment, arguing that Schreiter had failed to establish a prima facie case of negligence because she had not shown any duty on its part to install such a system.

The trial court granted Wasatch Manor's motion, holding that Schreiter failed to present a prima facie case [1] because she had not shown the cost of, or Wasatch Manor's ability to pay for, a fire sprinkler system. The trial court based its decision, in part, upon its exclusion of the sprinkler system cost estimate as an inadmissible subsequent remedial measure. While not specifically referred to in its order, the court seems also to have adopted the view that Schreiter's failure to designate an expert witness precluded her from making a prima facie case. Schreiter appeals, claiming that the trial court erred both in excluding the evidence and in granting summary judgment for Wasatch Manor.

## ADMISSION OF EVIDENCE

■ Schreiter argues that the trial court erred in construing Rule 407 of the Utah Rules of Evidence to preclude the building manager's testimony concerning the estimated cost of a fire sprinkler system. The trial court's interpretation of a rule constitutes a conclusion of law, which we review for correctness, according it no particular deference. *See Ward v. Richfield City*, 798 P.2d

---

1. The "prima facie case" terminology, familiar in the context of motions made at the close of plaintiff's case-in-chief at trial, is confusing in the context of the instant pretrial motion for summary judgment. *Compare* Utah R.Civ.P. 56(b)-(c) *with* Utah R.Civ.P. 41(b), 50(a). Wasatch Manor's position and the trial court's conclusion, more accurately stated, is that Wasatch Manor was entitled to judgment as a matter of law given the undisputed facts.

757, 759 (Utah 1990); *Salt Lake City v. Emerson,* 861 P.2d 443, 445 (Utah App.1993).

Rule 407, which concerns subsequent remedial measures, states that

> [w]hen, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Utah R.Evid. 407. While Schreiter argues that the bid evidence is admissible to show the feasibility of installing such a system, the trial court found that it was not within the feasibility exception to the rule. According to the court, "[t]he feasibility exemption applies only if there is an issue as to whether or not the fire sprinkling system physically can be installed."

However, neither the trial court nor Wasatch Manor cites any authority for such a narrow interpretation of Rule 407. In fact, the Fifth Circuit has noted just the opposite in interpreting Federal Rule of Evidence 407, of which the Utah rule is an exact copy. *See Reese v. Mercury Marine Div. of Brunswick Corp.,* 793 F.2d 1416, 1426–27 (5th Cir.1986). According to the *Reese* court, "Whether something is feasible relates not only to physical possibility, cost and convenience, but also to ultimate utility and success in intended·performance." *Id.* at 1428.

■ We therefore conclude that the trial court erred in excluding evidence of a sprinkler system's estimated cost. The feasibility of a particular precautionary measure clearly includes an analysis of its cost, as well

as its physical possibility.[2] Moreover, acceptance of Schreiter's position on the scope of the feasibility exception may not be necessary to our decision that the court erred in its ruling. Merely securing an estimate is not something "which, if taken previously, would have made the [fire] less likely to occur." Utah R.Evid. 407. Accordingly, obtaining the bid does not appear to qualify as a generally excludable subsequent remedial measure under Rule 407. *See id.*

## NEGLIGENCE CLAIM

■ Schreiter also argues that the trial court erred in granting summary judgment to Wasatch Manor on her claim that its failure to install a fire sprinkler system constituted negligence. Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Higgins v. Salt Lake County,* 855 P.2d 231, 235 (Utah 1993). Since a grant of summary judgment constitutes a question of law, we review it for correctness, according no particular deference to the trial court. *Id.*

### A. Prima Facie Case

Wasatch Manor claims, and the trial court ruled, that Schreiter failed to present a prima facie case of negligence.[3] Under Utah law, a negligence claim requires a showing of: "(1) a duty of reasonable care owed by the defendant to plaintiff; (2) a breach of that duty; (3) the causation, both actually and proximately, of injury; and (4) the suffering of damages by the plaintiff." *Williams v. Melby,* 699 P.2d 723, 726 (Utah 1985). While a plaintiff must establish all four elements in order to recover, Wasatch Manor moved for summary judgment solely on the issue of whether it breached any duty

---

**2.** Wasatch Manor also claims that the issue of a sprinkler system's feasibility was not controverted and therefore the evidence is inadmissible even if it would otherwise fit within the Rule 407 exception. While this position might have merit if we accepted Wasatch Manor's restrictive definition of feasibility, it is untenable given our conclusion that feasibility for purposes of Rule 407 includes cost considerations. As discussed in the next section of this opinion, Wasatch Man-

or argues that in order for Schreiter to make a prima facie case of negligence, she must show both the cost of such a system and defendant's ability to pay for it. If Schreiter must establish the system's cost, and·Wasatch. Manor contends she has not, then the cost question is clearly controverted.

**3.** *See* note 1.

owed to Schreiter. Causation and damages were not raised in the motion.

Wasatch Manor argues that in order to make a prima facie case, Schreiter must show: 1) the actual cost of a fire sprinkler system; and 2) Wasatch Manor's ability to pay for such a system. The trial court apparently employed this two-part requirement in granting summary judgment. Moreover, Wasatch Manor contends Schreiter could not establish a prima facie case without testimony from an expert in fire sprinkler systems. However, neither Wasatch Manor nor the trial court cites any legal support or logical underpinning for such standards, and we decline to adopt them.

### 1. Cost

■ It is true that cost may be an important factor in determining whether a reasonable person would, under all the circumstances, install a sprinkler system. *See Duncan v. Union Pac. R.R. Co.*, 790 P.2d 595, 598–99 (Utah App.1990), *aff'd*, 842 P.2d 832 (Utah 1992). Therefore, it may also be relevant in deciding whether Wasatch Manor breached its duty to Schreiter. *See id.* But Wasatch Manor advances no logic or authority convincing us to accept a strict rule requiring a plaintiff to establish the definitive cost of an additional safety measure in order to make a prima facie case of negligence.

■ In this case, the building manager's testimony, which the trial court erroneously excluded as explained above, established the approximate cost of a fire sprinkler system by means of an estimate obtained in the ordinary course of business. The cost was about half of the damages that Wasatch Manor ultimately sustained by reason of the fire. In addition, it is undisputed that a sprinkler system would have effectively controlled the fire, thereby preventing Schreiter's injuries and the deaths of two other people. Certainly, a jury could reasonably find that the approximate cost of such a system would not preclude its installation by a reasonable person under the circumstances of this case.

### 2. Ability to pay

■ Wasatch Manor's own actual or subjective ability to pay has no bearing at all on whether it breached its duty to Schreiter.[4] Were we to accept Wasatch Manor's requirement, aside from the practical problem of requiring a plaintiff to prove a particular defendant's financial position and capacity to pay, we would be imposing one standard of care on wealthy defendants and a lower standard on poor defendants; a higher standard on efficient and well-managed entities and a lower standard on inefficient, poorly managed entities. Accordingly, we are not persuaded that Schreiter would be required to prove Wasatch Manor's ability to pay for a sprinkler system in order to establish her prima facie case.

### 3. Expert testimony

■ Wasatch Manor also argues that Schreiter cannot establish a prima facie case absent expert testimony. It is true that expert testimony may be helpful in elucidating the applicable standard of care in certain cases, and even necessary in others. *See Wycalis v. Guardian Title*, 780 P.2d 821, 826 n. 8 (Utah App.1989), *cert. denied*, 789 P.2d 33 (Utah 1990). Such testimony is needed "[w]here the average person has little understanding of the duties owed by particular trades or professions," as in cases involving medical doctors, architects, and engineers. *Id.* However, Wasatch Manor calls to our attention no authority suggesting retirement home operators have been included in this category of defendants. Where the propriety of the defendant's action "is within the common knowledge and experience of the layman ... the guidance provided by expert testimony is unnecessary." *Nixdorf v. Hicken*, 612 P.2d 348, 352 (Utah 1980). *See Jennings v. Stoker*, 652 P.2d 912, 914 (Utah 1982).

■ The lack of expert testimony is not necessarily fatal to Schreiter's claim given

---

4. We note that even if actual ability to pay for installation had to be shown, the record contains at least some evidence that would assist Schreiter in making that showing. For example, Wasatch Manor had the financial wherewithal to expend approximately $500,000 to remodel its building in 1984.

the facts of this case. At issue is simply whether Wasatch Manor's duty of reasonable care required it to install a fire sprinkler system, knowing the dangers associated with in-room smoking in a high-rise building full of senior citizens, some of whom were non-ambulatory. While expert testimony to the effect that other high-rise retirement homes routinely install sprinkler systems and that such a system could easily have been installed by Wasatch Manor would certainly help Schreiter's case, a jury could reasonably find that Wasatch Manor was negligent even absent such testimony. This is simply not a situation where the issues or facts appear to be so complex or technical that they would otherwise elude the mental processes of the average citizen. *See Nixdorf,* 612 P.2d at 352. Nor does Wasatch Manor cite to any authority requiring expert testimony to make out a prima facie case in similar cases.[5]

### B. Propriety of Summary Judgment

Having disposed of the foregoing issues, we must decide whether the summary judgment can nonetheless be sustained on the record before us. This court has noted that "[a]s a general proposition, summary judgment is inappropriate to resolve a negligence claim on its merits, and should be employed 'only in the most clear-cut case.'" *Wycalis v. Guardian Title,* 780 P.2d 821, 825 (Utah App.1989) (quoting *Ingram v. Salt Lake City,* 733 P.2d 126, 126 (Utah 1987) (per curiam)), *cert. denied,* 789 P.2d 33 (Utah 1990). Further, "[o]f particular concern is the precept that '[o]rdinarily, whether a defendant has breached the required standard of care is a question of fact for the jury.'" *Id.* (quoting *Jackson v. Dabney,* 645 P.2d 613, 615 (Utah 1982)). Accordingly, summary judgment is improper unless the standard of care can be determined as a matter of law, "and reasonable minds could reach but one conclusion as to the defendant's negligence under the circumstances." *Id.*

The facts of this case do not meet the *Wycalis* requirements. The particular standard of care that Wasatch Manor owed Schreiter cannot be determined as a matter of law, because a landlord's duty to its tenants is to exercise reasonable care in all circumstances. *Williams,* 699 P.2d at 726; *Erickson v. Wasatch Manor, Inc.,* 802 P.2d 1323, 1327 (Utah App.1990); *English v. Kienke,* 774 P.2d 1154, 1156 (Utah App.1989), *aff'd,* 848 P.2d 153 (Utah 1993). In addition, "[t]he care to be exercised in any particular case depends upon the circumstances of that case and on the extent of foreseeable danger involved and must be determined as a question of fact.'" *Williams,* 699 P.2d at 727 (quoting *DCR, Inc. v. Peak Alarm Co.,* 663 P.2d 433, 435 (Utah 1983)). Accordingly, whether Wasatch Manor breached the required standard of care is a question for the jury, which cannot be appropriately decided in summary judgment. *See id.* at 727–28.

In contrast, Wasatch Manor argues that it is entitled to summary judgment because it complied with the building code in effect at the time of construction and passed its yearly fire inspections. However, compliance with statutory or administrative regulations does not necessarily discharge the landlord's duty of care. *Id.* at 728; Restatement (Second) of Torts, § 288 C (1965). Rather, the focus is whether "a reasonably prudent person should have known, or could have learned by the exercise of reasonable care," that a dangerous condition existed. *Id.* Where such knowledge may be imputed, the landlord may be liable for failing to take adequate safety precautions. *Id. See also English,* 774 P.2d at 1156.

We conclude that reasonable minds could differ on whether the standard of care Wasatch Manor owed Schreiter required more than simple compliance with the building code, given the particular circumstances of this case. Therefore, since the issues of

---

**5.** At oral argument, Wasatch Manor pointed out that in *Williams v. Melby,* 699 P.2d 723 (Utah 1985), an architect's affidavit concerning the faulty design of an upper story window was held to create an issue of fact as to whether the building was negligently designed, constructed, or maintained. *Id.* at 725–26. Contrary to Wasatch Manor's characterization of the case, we see in *Williams* only a requirement that admissible evidence pointing to a landlord's negligence must be adduced if summary judgment is to be avoided—not a requirement that those facts be established by an expert.

Wasatch Manor's duty and the breach thereof cannot be decided as matters of law, the trial court erred in granting summary judgment.

## CONCLUSION

The trial court erred in excluding evidence of the estimated cost of a fire sprinkler system and in granting Wasatch Manor summary judgment on Schreiter's claim of negligence. Given the facts of this case, Schreiter was not limited to establishing Wasatch Manor's duty of care through expert testimony. Further, Schreiter appears able to present a prima facie case of negligence and is therefore entitled to her day in court.

Accordingly, we reverse the grant of summary judgment for Wasatch Manor, and remand for trial or other proceedings consistent with this opinion.

DAVIS and JACKSON, JJ., concur.